# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KATHRYN L. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-07-0792-HE |
| | ) | |
| QORVIS COMMUNICATIONS, LLC, | ) | |
| a foreign limited liability company; and | ) | |
| JOHN DOE I, a resident of the State of | ) | |
| Oklahoma, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Plaintiff Kathryn L. Wilson filed this action in state court, asserting malicious prosecution and intentional infliction of emotional distress claims against defendants Qorvis Communications, LLC ("Qorvis") and John Doe I.  The plaintiff alleges Qorvis maliciously prosecuted her by naming her as a codefendant in a suit it filed against her husband in Virginia ("Virginia lawsuit").  She claims the defendant intentionally inflicted emotional distress on her by suing her and, after the Virginia lawsuit was filed, by publishing false statements in Oklahoma, including that her husband was engaged in an extra-marital affair. Qorvis removed the action based on the court's diversity jurisdiction and filed a motion to dismiss. The defendant challenges personal jurisdiction and venue, and contends the complaint fails to state a claim against it upon which relief can be granted.  If the court concludes that it is subject to suit here and that the plaintiff's claims are not otherwise dismissible, Qorvis asks, alternatively, that the action be transferred to the United States District Court for the Eastern District of Virginia, pursuant to 28 U.S.C. § 1404(a).  The facts

pertinent to the resolution of the motion follow.[1]

BACKGROUND

Christopher Wilson ("Wilson"), the plaintiff's husband, was a consultant who, for more than a decade, has conducted research, polling and political consulting for clients in Oklahoma and the District of Columbia. He established Wilson Research Strategies, Inc. ("WRS") in 1998, to provide political consulting services and was WRS's sole shareholder. In July, 2001, Qorvis, a public affairs firm, hired Wilson. The employment agreement obligated Wilson to build the business of a newly created research division of Qorvis, to be known as Wilson Research Strategies. Although not clear from the record before the court, it appears that Qorvis did not acquire WRS, Inc., but rather hired Wilson to perform for its research division the services he provided through WRS, Inc. *See* defendant's Exhibit 3, pp.10, 15.[2] At this time WRS had an office, employees and assets located in Oklahoma. Friction developed between the parties and they attempted to negotiate Qorvis's purchase of WRS from Wilson. When the acquisition effort failed, Wilson and Qorvis executed a new employment agreement in December, 2003. The relationship between Wilson and Qorvis

---

[1]The facts have been taken from the petition and the pleadings filed in conjunction with the defendant's motion, including the Final Arbitration Award dated March 8, 2007, defendant's Exhibit 3. The plaintiff states that the Award, while containing some inaccuracies in its description of the parties and their relationship, provides a general background of the events preceding the Virginia litigation.

[2]As explained by the plaintiff, Wilson entered into an agreement with Qorvis pursuant to which Wilson "integrated his company, Wilson Research Strategies, Inc. ("WRS"), into Qorvis. Plaintiff's response, p. 2.

deteriorated and Qorvis terminated Wilson on October 22, 2004.  The same date Qorvis filed its lawsuit in Virginia against the plaintiff, who was an officer of WRS primarily involved in administering bank accounts, and her husband.

The plaintiff asserts that Qorvis distributed the complaint from the Virginia case and a defamatory letter to WRS's Oklahoma-based clients and the local press.   She claims the Virginia lawsuit eventually was arbitrated and the arbitrator, on January 29, 2007, dismissed all Qorvis' claims against her for lack of evidence.  She filed this case on June 19, 2007.

<u>JURISDICTION</u>

The standard applied to determine if a court has in personam jurisdiction is well established. "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'" <u>Kuenzle v. HTM Sport-Und Freizeitgerate AG</u>, 102 F.3d 453, 455 (10th Cir. 1996) *(*quoting <u>Far West Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1074 (10th Cir.1995)). Because Oklahoma permits the exercise of jurisdiction to the extent allowed by the United States Constitution, the only question is whether maintenance of the suit satisfies the constitutional requirement of due process.  <u>Kennedy v. Freeman,</u> 919 F.2d 126, 128 (10th Cir. 1990).  The Supreme Court held in <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) that due process is not offended by the exercise of jurisdiction over a nonresident defendant if that defendant had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"*Id.* at 316

3

(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A court may exercise general or specific jurisdiction over a company. *See* Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1418 (10th Cir. 1988). Jurisdiction is specific if the suit arises out of or is related to the defendant's contacts with the forum state. *Id*. Jurisdiction is general if does not directly arise from a defendant's forum-related activities, but is based on the defendant's general presence or accumulated contacts with the forum state. *Id*.; Kuenzle, 102 F.3d at 455-56 ("Where '[g]eneral jurisdiction lies ... the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state.'") (quoting Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996)).

Whether a non-resident defendant has the necessary minimum contacts with the forum state to establish in personam jurisdiction is decided on the particular facts of each case and the plaintiff has the burden of establishing personal jurisdiction over the defendant. *Id*. at 456. When the jurisdictional issue is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing and all factual disputes are resolved in the plaintiff's favor. Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291,1295 (10th Cir. 2004).[3]

Qorvis asserts that is a limited liability company incorporated in Virginia, with its

---

[3]The plaintiff erroneously asserts that the court, when determining whether it has personal jurisdiction over a party, is limited to the facts pleaded in the complaint. See Bell *Helicopter Textron, Inc., 385 F.3d at1295.*

principal place of business in Washington, D.C.  The defendant claims it currently has no

contacts with the State of Oklahoma and did not have sufficient contacts during the pertinent

time period to allow the court to exercise general jurisdiction over it.  Qorvis argues that the

plaintiff's conclusory allegations that Qorvis has contracted with companies in Oklahoma

and done business in the state do not establish the continuous and systematic contacts with

the forum that are required to subject it to suit here.

Qorvis also argues that specific jurisdiction does not exist because the plaintiff has

alleged only one link between it and the forum that is directly related to her claims – the

purported discussion between the defendant's agent and an unnamed party about the

Wilson's alleged affair.  She has not shown, Qorvis asserts, that her claims against it arise

out of Oklahoma-related activities.  The plaintiff responds that the court has jurisdiction over

the defendant, without specifying whether it is general or specific.

While Qorvis may not presently have contacts with the State of Oklahoma, the

defendant admits that it was registered and licensed to do business in the state until March,

2005; that it maintained a place of business in Oklahoma until August 1, 2006; and that it

employed persons or agents in the state until April 1, 2005.  Defendant's Exhibit 1.  As the

plaintiff notes, the relevant time period for purposes of this case is when the plaintiff's claims

arose.  "Minimum contacts [for purposes of general jurisdiction] must exist either at the time

the cause of action arose, the time the suit was filed, or within a reasonable period of time

immediately prior to the filing of the lawsuit."  Johnson v. Woodcock, 444 F.3d 953, 955-56

(8th Cir. 2006) (quoting Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 562 (8th

Cir.2003)).  *See also* <u>Steel v. United States</u>, 813 F.2d 1545, 549 (9th Cir. 1987) ("When a

court is exercising specific jurisdiction over a defendant, 'arising out of or related to the

defendant's contacts with the forum,' <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466

U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984), the fair warning that

due process requires arises not at the time of the suit, but when the events that gave rise to

the suit occurred.").  The defendant's admissions as to its prior presence in the forum,

coupled with the allegations in the complaint and the exhibits attached to the plaintiff's

response, are sufficient to "'constitute the kind of continuous and systematic general business

contacts' required for general jurisdiction."[4] <u>Kuenzle</u>, 102 F.3d at 457 (quoting <u>Helicopteros</u>,

466 U.S. at 416).[5]  *See e.g.*, plaintiff's response, Exhibit 1; plaintiff's reply, Exhibit 1.  *See*

<u>Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.</u>, 205 F.3d 1244, 1247 (10th Cir. 2000)

(plaintiff's burden of establishing personal jurisdiction over the defendants "in the

---

[4] When assessing a defendant's contacts with the forum to determine whether they are sufficient to justify the assertion of general jurisdiction, courts have considered such factors as "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation."  <u>Kuenzle</u>, 102 F.3d at 457.

[5] Although the "minimum contacts" principle was applied initially in the context of specific jurisdiction, <u>Kuenzle</u>, 102 F.3d at 456 n.2, the phrase signifies "the broader due process inquiry into the sufficiency of any nonresident defendant's contacts with a forum state, rather than just an analysis of the sufficiency of specific jurisdiction contacts ...."  Id.

preliminary stages of litigation ... is 'light'").[6]  *See generally* Steel, 813 F.2d at 1549-50 ("[T]he fair warning given [the defendant] by his contacts with California does not expire simply because of his lack of later contacts with the state.").

That does not, however, end the inquiry.  The court must make the further determination of whether subjecting the defendant to suit in Oklahoma would be "reasonable."  In Benton v. Cameco Corp., 375 F.3d 1070, 1078 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005), the Tenth Circuit discussed the factors that should be considered when determining "'whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'"  *Id.* (quoting OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir.1998)).

> In assessing whether an exercise of jurisdiction is reasonable, we consider [a] the burden on the defendant, [b] the forum state's interest in resolving the dispute, [c] the plaintiff's interest in receiving convenient and effective relief, [d] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [e] the shared interest of the several states in furthering fundamental social policies.

*Id.* (quoting OMI, 149 F.3d at 1095).

These factors weigh slightly in favor of exercising personal jurisdiction over the defendant.  Clearly there would be some burden on the defendant if it is required to litigate in Oklahoma.  However, proceeding in another forum obviously would not be convenient

---

[6] While this conclusion makes it unnecessary to decide whether the plaintiff's claims "arise from" Qorvis' contacts with the forum, the court is not persuaded that the defendant's activities in Oklahoma and the plaintiff's claims are so unrelated that specific jurisdiction does not exist.  See Steel, 813 F.2d at 1549-50.

for the plaintiff, either.  As for the forum state's interest in adjudicating the dispute, "'[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.'"  *Id.* at 1079 (quoting <u>OMI</u>, 149 F.3d at 1096).[7]  This factor, as well as the third, favors the plaintiff.

The interstate judicial systems's interest in obtaining efficient resolution "asks 'whether the forum state is the most efficient place to litigate the dispute.  Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.'"  *Id.* at 1080 (quoting <u>OMI</u>, 149 F.3d at 1097).  The witnesses in the dispute are located in Oklahoma and Virginia;  the alleged wrongs apparently occurred in Oklahoma and Virginia; the governing law has not been determined; and there is no apparent problem of piecemeal litigation.   Therefore, this factor does not weigh heavily in favor of either party.

The remaining consideration – the shared interest of the several states in furthering fundamental social policies – "'focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations.'"  *Id.* at 1080 (quoting <u>OMI</u>, 149 F.3d at 1097).  This factor does not appear to apply in this case.

With the reasonableness factors tilting somewhat in favor of the plaintiff, the court

---

[7]*While "'[t]he state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws,'"* <u>*Benton*</u>*, 375 F.3d at 1079 (quoting* <u>*OMI*</u>*, 149 F.3d at 1096), the parties did not discuss which state's law governs the conflict.*

concludes that exercising personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice.  Subjecting it to the court's jurisdiction would be consonant with the requirements of due process.  *See* Rothstein v. Carriere, 41 F.Supp.2d 381, 384-86 (E.D.N.Y. 1999).

## VENUE

Venue is appropriate in a diversity case in  "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391.  As the defendant does not reside in Oklahoma and there is another district in which the action may be brought, the plaintiff, who has the burden of establishing that venue is proper in the forum district, Rothstein v. Carriere, 41 F.Supp.2d at 386, must show that a substantial part of the events underlying her claims occurred in Oklahoma.

Qorvis contends that venue is not proper in this state because the basis for the plaintiff's claims – the Virginia lawsuit – was not filed in Oklahoma.  However, "there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3806.1 at 201 (3d ed. 2007).  Qorvis also has construed the phrase "events or omissions giving rise to the claim" too narrowly.  The plaintiff's intentional

infliction of emotional distress claim is based, at least in part, on conduct that occurred in Oklahoma. It was here that the newspaper article about the lawsuit against the plaintiff was published. As for the plaintiff's malicious prosecution claim, while the lawsuit was filed in Virginia, it involved a dispute arising out of a business being conducted by Wilson and the plaintiff in Oklahoma. A substantial part of the events giving rise to the lawsuit and, thus, the plaintiff's malicious prosecution claim took place here. Venue is, therefore, proper in the Western District of Oklahoma. *See* Rothstein, 41 F.Supp.2d at 386-87.

## RULE 12(b)(6)

When considering whether the plaintiff's claims should be dismissed under Fed.R.Civ.P. 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff, the nonmoving party. Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir.2007). A claim will be dismissed if "the complaint does not contain enough facts to state a claim to relief that is plausible on its face." *Id.* (Internal quotations omitted). "'[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.'" *Id.* (quoting Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)).[8]

---

[8]The defendant moves to dismiss any defamation claim that has been asserted. As one has not been pleaded, the court will not address this argument. See plaintiff's response, p. 11 n.5.

10

<u>Malicious Prosecution</u>

Qorvis argues that the plaintiff's malicious prosecution claim fails because the court in the Virginia lawsuit granted it equitable relief against the plaintiff, "thus making it impossible for Plaintiff to show that the Virginia Litigation was terminated in her favor – a required element of a malicious prosecution claim." Defendant's motion, p. 11. The defendant relies on materials extraneous to the complaint to establish the alleged flaw in the plaintiff's claim, stating that the court may take judicial notice of the relief accorded by the federal court in Virginia.

If the court considers "matters outside the pleading", it must treat this aspect of the defendant's motion as one for summary judgment. Fed.R.Civ.P. 12(b)(6). "Most federal courts ... have viewed the words "matters outside the pleading" as including ... matters of which the district court can take judicial notice ...." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed.2004) (citations omitted). *See* <u>Gilchrist v. Citty</u>, Nos. 02-6352, 02-6353, 2003 WL 21465500, at *1 (10th Cir. June 25, 2003) ("As relevant to the instant Rule 12(b)(6) analysis, we may take judicial notice of the existence of the opinions of other courts but not the truth of the facts recited therein.") (unpublished opinion). The court finds it inappropriate at this time to consider extraneous materials and concludes that the plaintiff's malicious prosecution claim, as pleaded, states a claim and will not be dismissed.

<u>Intentional Infliction of Emotional Distress</u>

Qorvis contends the plaintiff's intentional infliction of emotional distress claim should

be dismissed because it is time-barred , was waived by the plaintiff's failure to assert it in the Virginia lawsuit or because the defendant's alleged actions did not involve the extreme or outrageous conduct required to establish the tort.[9]  As only some, but not all, of the conduct pleaded in support of this claim may have occurred outside of the two year limitations period, the claim will not be dismissed at this point as being untimely.  Also, as the claim is not based solely on the filing of the Virginia lawsuit, the court does not have to determine whether the plaintiff waived it by not asserting it as a compulsory counterclaim in that action.  Finally, the court concludes that the plaintiff's allegations suffice to state a claim for intentional infliction of emotional distress.[10]

## VENUE TRANSFER

In determining whether a case should be transferred, the court considers the plaintiff's choice of forum, the convenience of witnesses, their availability via compulsory process, the costs of making necessary proof, docket congestion, familiarity with local law, and other practical considerations.[11]  Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).  The defendant has the evidentiary burden under the statute, 28 U.S.C.

---

[9]The defendant also asserts that the plaintiff has failed to articulate the factual basis for this claim.  The court finds paragraphs 6-21 of the petition contain enough facts to satisfy Rules 8 and 12(b)(6).

[10]Whether the plaintiff can establish the level of conduct and injury required to prove such a claim is a different matter.

[11]Other factors often weighed by courts when considering a § 1404 change of venue, such as the advantage of having a local court decide questions of local law, conflict of laws issues, relative advantages and obstacles to a fair trial, etc., are not discussed by the parties and do not appear to be pertinent here.

§ 1404(a), of showing that the existing forum is inconvenient.  Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).

Qorvis states that all of its relevant documents and witnesses are located in Virginia or Washington, D.C., including their attorneys, whose testimony is relevant to key issues in the case, such as whether probable cause existed for Qorvis to file the Virginia lawsuit and whether the defendant reasonably relied on its attorneys' advice in pursing that litigation. Qorvis also asserts that several of its employees with knowledge pertaining to the plaintiff's claims are key personnel. Their absence from company headquarters in Virginia might, Qorvis maintains, adversely affect the defendant's operations, making the cost of trying the case in Oklahoma unduly burdensome and expensive for it.

Qorvis also contends that trying the case in Virginia, rather than Oklahoma, would conserve judicial resources, as the plaintiff's claims are based in large part on the Virginia lawsuit that was "initially litigated" in the United States District Court for the Eastern District of Virginia.   Because the Virginia court granted initial injunctive relief to Qorvis and confirmed the arbitration award, Qorvis contends that it will be familiar with many of the issues raised by this lawsuit and be"better positioned" to rule on potential defenses such as issue preclusion or judicial estoppel.  Qorvis also notes that the Virginia court has continuing jurisdiction over the judgment that it is now attempting to enforce, and may conclude that this lawsuit is simply an attempt to frustrate Qorvis' collection efforts.

The plaintiff responds that her choice of forum should be given preference, that her witnesses and evidence are located in Oklahoma, not Virginia, and that it would be more

13

costly to try the case in Virginia than here.  She also doubts that judicial economy would be served by transferring the case as the Virginia court did not hear the case on the merits.

Proceeding in either Oklahoma or Virginia will be inconvenient to one of the parties and that party's witnesses.  Transferring the case would merely shift that inconvenience from one side to the other.  That "is not a permissible justification for a change of venue." Scheidt, 956 F.2d. at 966.

The location of the underlying lawsuit also does not weigh in favor of a change of venue.  Because that case was resolved by arbitration, rather than by more extensive proceedings in court, the Virginia court lacks the familiarity with the facts and issues that it otherwise might have had and which might have warranted transferring the case there.

Considering the factors relevant to the 1404(a) analysis and that the plaintiff's choice of forum "should rarely be disturbed" unless the balance strongly favors the movant, Scheidt, 956 F.2d at 965, the court concludes the defendant has not met its burden of establishing that the case should be transferred to Virginia.

Accordingly, having found that the court has in personam jurisdiction over the defendant, that venue is proper in this district, that the plaintiff's claims should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), and that the action should not be transferred to Virginia on forum-convenience grounds, the defendant's motion to dismiss [Doc. #14] is **denied.**

**IT IS SO ORDERED**.

Dated this 20th day of November, 2007.


_____
JOE HEATON
UNITED STATES DISTRICT JUDGE